AO 106 (Rev. 04/10) Application for a Search Warrant                                                                              AUSA Litton

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched* )<br>*or identify the person by name and address)* )<br>)<br>One White Apple iPhone Cell Phone with a Clear Case )<br>and One White Samsung Galaxy Cell Phone with a Gray )<br>Case, IMEI: 356626350535300 ) | Case No.  2:23-mj-90 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A to the Affidavit in Support of the Search Warrant Application, incorporated herein by reference.

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit in Support of the Search Warrant Application, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1),<br>and 841(b)(1)(C) | Conspiracy to distribute cocaine |

The application is based on these facts:

See Affidavit in Support of this Application, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matthew J. Voytek IV, Special Agent #6591
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  2/9/2023

Chelsey M. Vascura
United States Magistrate Judge
*Judge's signature*

City and state:  Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**IN THE MATTER OF THE SEARCH OF ONE WHITE APPLE IPHONE CELL PHONE WITH A CLEAR CASE AND ONE WHITE SAMSUNG GALAXY CELL PHONE WITH A GRAY CASE, IMEI: 356626350535300**

CASE NO. ___2:23-mj-90_____

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Matthew J. Voytek, a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state the following:

## I. INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application for a warrant under Rule 41 of the Federal Rules of Criminal Procedure to search a White Apple iPhone cell phone with a clear case, White Samsung Galaxy cell phone with a gray case IMEI: 356626350535300 (the "**TARGET DEVICES**"), as further described in Attachment A, and to seize items described in Attachment B.

2.       I am a Special Agent with the ATF and have been so employed since June 2021. I have attended formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Criminal Investigator Training Program. I also attended the ATF National Academy in Glynco, Georgia, where I completed Special Agent Basic Training. I have received training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and the National Firearms Act of 1932. I am presently assigned as a Special Agent for the ATF Columbus Field Division, Columbus Group I Field Office. Under 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States.

3. As a Special Agent, I have participated in many investigations involving federal firearms violations and narcotics trafficking. Through these investigations, I have employed various investigative techniques, including conducting electronic surveillance, using confidential informants, and making controlled purchases of firearms and narcotics. I have also participated in conducting physical surveillance and have executed multiple federal arrest warrants. I also know how to analyze information resulting from traditional record searches and reviewing case files. As a result of my training and experience, I am familiar with federal laws pertaining firearms and narcotics trafficking.

4. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other ATF agents and other law-enforcement officers; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another special agent, law-enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Throughout this affidavit, reference to "investigators" specifically refers to criminal investigators.

5. This affidavit is intended to show that there is sufficient probable cause for the above-described search warrant and does not purport to set forth all my knowledge of, or investigation into, this matter. The facts and information contained in this affidavit are based on my personal knowledge, my training and experience, my interviews of various witnesses, including law-enforcement personnel who participated in this investigation, and my review of certain records and documents.

2

## II. BACKGROUND ON CONTROLLED SUBSTANCES TRAFFICKING

6.     Federal law generally prohibits the manufacture, distribution, and dispensation of controlled substances—including cocaine, fentanyl, oxycodone, and marijuana—and the possession with intent to do any of those activities. *See* 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). Federal law also prohibits conspiring to do any of the above. *See* 21 U.S.C. § 846.

7.     I know based on my training, knowledge, and experience that individuals who unlawfully distribute controlled substances ("drug traffickers") commonly maintain their tools of the trade—including controlled substances, contraband, proceeds of drug sales, and records and documents related to their drug trafficking—within secure locations inside their residence and/or vehicles both for their ready access and to conceal them from law enforcement.

8.     More specifically, I know that drug traffickers commonly maintain both the source of their illicit gains (the controlled substances themselves) and the proceeds of their crimes, in the form of U.S. currency, on-hand to readily maintain and finance their illicit drug business.

9.     I also know that drug traffickers commonly maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Likewise, I know that drug traffickers commonly maintain these books, records, receipts, notes, ledgers, etc., where they will have ready access to them, such as in their cell phones.

10.     I also know that drug traffickers commonly maintain addresses or telephone numbers in books, papers, or on electronic media, including on their cell phones or other portable electronic devices, which reflect the names, addresses, and/or telephone numbers of their associates and clients.

3

11.    I also know that drug traffickers often utilize electronic equipment such as cell phones and other portable electronic devices, computers, currency counting machines, and telephone answering machines to generate, transfer, count, record, and/or store information concerning their drug trafficking.

12.    I also know that drug traffickers often take or cause to be taken photographs and videos of them, their associates, their property, and their product.    Drug traffickers usually maintain these photographs and videos in their possession, commonly on their cell phones or other portable electronic devices.

## III. PROBABLE CAUSE

13.    Based on the facts set forth in this affidavit, there is probable cause to believe that Robert L. Haley has committed violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 (distribution of controlled substances and conspiracy to do the same) [collectively, the "**SUBJECT OFFENSES**"].   Furthermore, there is probable cause to search the **TARGET DEVICES** for evidence of those crimes and property designed for use, intended for use, or used in committing those crimes.

14.    In August of 2022, ATF Confidential Informant #31219 ("CI #31219") advised investigators that an armed drug trafficker named Brett Collins (a/k/a "B.J.") deals fentanyl, pills, and marijuana in central Ohio.   As a result, the ATF Columbus Field Office commenced an investigation into Collins, who is a convicted felon.[1]

---

[1] I have queried the Franklin County Clerk of Courts' Website and learned that Collins was convicted of a felony offense for improper handling of a firearm (F4) in Case No. 20-cr-063. Judgment was imposed for that conviction on or about June 15, 2020.

4

15.     On or about September 8, 2022, Collins corresponded with an ATF Special Agent working in an undercover capacity ("ATF UCA") regarding the sale of cocaine, some Percocet pills, and two firearms. Collins explained to ATF UCA that he had family in Dayton, Ohio, from whom he could acquire the cocaine to sell to ATF UCA. Through a review of law-enforcement databases along with open-source social media, ATF personnel were able to identify family members Ashley Collins (Brett's sister) and her husband, Robert Haley, who lived in Dayton.

16.     Between September 20, and December 14, 2022, an ATF UCA engaged Haley in a series of undercover purchases of controlled substances. Each of those controlled buys occurred at a pre-determined buy location, and each of those buys was recorded by video and audio devices. During that timeframe, Haley met with the ATF UCA on six different dates. During those meetings, Haley sold the ATF UCA over 500 grams of cocaine (together with his indicted co-conspirator).

17.     As a result of Haley's actions, the Grand Jury for the Southern District of Ohio returned a one-count Indictment against him in Case No. 2:22-cr-241 on December 20, 2022. (Indictment, ECF No. 5). There, the Grand Jury charged Haley with one count of conspiracy to distribute cocaine (Count 1). (*Id.*).

## IV. NEXUS BETWEEN HALEY AND THE TARGET DEVICES

18.     On or about January 12, 2023, ATF Investigators executed one federal arrest warrant in Dayton, Ohio. Haley's arrest warrant in Case No. 2:22-cr-241 was executed at 1589 Stanley Avenue, Dayton, Ohio.

19.     During the execution of that arrest warrant, investigators recovered the **TARGET DEVICES** from Haley.

20. When asked by ATF investigators if the cell phones recovered were Haleys, Haley

acknowledged and said they were his cell phones.

21.     The **TARGET DEVICES** were taken into custody at that time and have been in law enforcement custody since that time.  ATF has continued investigating Haley and others who are engaged in a conspiracy involving distribution of controlled substances.

22.     The **TARGET DEVICES** are currently in storage at 230 West Street, Suite #300, Columbus, Ohio.  In my training and experience, I know that the **TARGET DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same stat, as they were when the **TARGET DEVICES** first came into the possession of the ATF.

## V.  THE TARGET DEVICES' RELATIONSHIP TO THE ALLEGED CRIMINAL ACTIVITY

23.     As detailed above, Haley used the **TARGET DEVICES** to facilitate multiple unlawful sales of controlled substances.

24.     In addition, I know through training and experience that cell phones are commonly used, or have a relationship to, unlawful acts such as those described in this affidavit.  For example, I know that cell phones are commonly used to communicate the sale of drugs, and other unlawful contraband, and that cell phones can be used for other actions Haley may have taken in furtherance of his criminal activity.

## VI. TECHNICAL TERMS

25.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers

6

called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera: A digital camera is a device that records still and moving images digitally. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store any digital data, such as word processing documents, even if the device is not designed to access such files. Some portable media players can use removable storage media. Removable storage media

7

include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs

8

run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device. ·

g.    IP Address: An Internet Protocol address ( or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97 .178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

h.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

26.    Based on my training, experience, and research, I know that the **TARGET DEVICES** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

9

## VII. ELECTRONIC DEVICES AND STORAGE

27.     As described above and in Attachment A, this application seeks permission to

search and seize things that the **TARGET DEVICES** might contain, in whatever form they are

stored. Based on my knowledge, training, and experience, I know that electronic devices can

store information for long periods of time. Even when a user deletes information from a device,

it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via

the Internet are typically stored for some period of time on the device. This information can

sometimes be recovered with forensics tools.

28.     Searching for the evidence described in Attachment A may require a range of data

analysis techniques. In some cases, agents and computer analysts may be able to conduct

carefully targeted searches that can locate evidence without requiring a time-consuming manual

search through unrelated materials that may be commingled with criminal evidence. In other

cases, however, such techniques may not yield the evidence described in the warrant. Criminals

can mislabel or hide information, encode communications to avoid using key words, attempt to

delete information to evade detection, or take other steps designed to frustrate law-enforcement

searches for information. These steps may require agents and law enforcement or other analysts

with appropriate expertise to conduct more extensive searches, such as scanning storage areas

unrelated to things described in Attachment A, or perusing all stored information briefly to

determine whether it falls within the scope of the warrant. In light of these difficulties, the ATF

intends to use whatever data analysis techniques appear necessary to locate and retrieve the

evidence described in Attachment A.

## VIII. CONCLUSION

29.     Based on the forgoing, I believe that there is probable cause to issue a search

warrant for the **TARGET DEVICES**, more particularly described in Attachment A, and to seize

the items described in Attachment B, as those items constitute evidence of the **SUBJECT**

**OFFENSES** or property designed for use, intended for use, or used in committing the

**SUBJECT OFFENSES**.

Respectfully submitted,

Matthew Voytek, Special Agent
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means
this _9th_ day of February 2023.

The Honorable Chelsey M. Vascura,
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

### Property to Be Searched

The **TARGET DEVICES** are further described as: (1) a white Apple iPhone cell

phone with a clear case; and (2) a white Samsung Galaxy cell phone with a gray case IMEI:

356626350535300. Photos of the **TARGET DEVICES** are depicted below:





12

## ATTACHMENT B

### Items to Be Seized

1. Any evidence or information related to the **SUBJECT OFFENSES** articulated in the Affidavit in support of the Search Warrant Application.

2. Any evidence or information related to the identity of potential co-conspirators regarding the **SUBJECT OFFENSES**.

3. Evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   a    Records and things evidencing the use of the Internet Protocol address

   b.    records of Internet Protocol addresses used;

   c.    records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

5. Any other items which constitute evidence of the **SUBJECT OFFENSES** identified above.